Carroll,
·June 3, 1941. } No. 3244.

WILLIAM N. ROGERS v. UNITED STATES RUBBER COMPANY.

*Conrad E. Snow* and *Demond, Sulloway, Piper & Jones* (*Mr. William N. Rogers* orally), for the plaintiff.

*Paul E. Nourie* and *Dudley W. Orr* (*Mr. Orr* orally), for the defendant.

MARBLE, J.   The plaintiff purchased the tire in question on June 22, 1939, and placed it on the right rear wheel of his car.   He testified that on July 6, 1939, while he was driving from Wolfeboro to Sanbornville, the tire "went down on the tarvia," causing his automobile to leave the road and collide with a telephone pole and guardrail.   He claims that the accident was due to a blowout caused by a defect in the tire.

He concedes that the warranty of fitness for use, imposed by section 15 of the sales act, does not run with the goods sold, but contends that he was an immediate purchaser from the defendant, since Rice, by the terms of his warehouse dealer's agreement, was the defendant's agent.

The defendant, on the other hand, not only denies the existence of the alleged agency but claims that even if an implied warranty of fitness ran from the defendant to the plaintiff, no reasonable person could find on the evidence that the accident was caused by a defect in the tire.

Although the above-mentioned agreement was executed by one of the defendant's subsidiary corporations, the parties have stipulated that the agreement may be treated precisely as though it had been executed by the defendant company itself.   Rice, who is designated in the agreement as a warehouse dealer, agrees "among other things" to use his best efforts to sell the defendant company's complete line of tires; to maintain at Manchester a suitable place of business, "identified and advertised as a distributing center for the Company's merchandise"; to exert his best efforts to obtain "the volume of business that shall be satisfactory to the Company," and to handle adjustments of the company's merchandise "in accordance

with the terms of its policy for adjustment in effect from time to time."

Title to each item of merchandise is to remain in the company until its sale "whereupon said title shall pass directly from the Company to the purchaser." It is further provided that title "to the proceeds and accounts receivable of sales" by the dealer "shall always be vested in the Company and subject to its direction and control."

The agreement recognizes the relation as one of agency by limiting the dealer's authority in these words: "This agreement does not constitute the Warehouse Dealer an agent of the Company for any purpose other than those herein specified." Authority to warrant the goods sold is conferred on the dealer by implication, since he is expressly prohibited from making any warranty "in the sale of any of the consigned stock other than strictly in accordance with the Company's current warranty then in effect." The reference to the stock as "consigned" is not inconsistent with the reference to the dealer as agent, for "The very term [consignment] imports an agency." *Harris* v. *Coe*, 71 Conn. 157, 163. See, also, *Parks &c.* v. *Ingram*, 22 N. H. 283, 295. And in this connection it should be noted that "an agent as such does not have title to the property of the principal, although he may be entrusted with possession and although he may have power to pass title." 1 Scott, Trusts, *s.* 8.

In the performance of the court's duty to interpret written instruments (*Pettee* v. *Chapter*, 86 N. H. 419, 428; *Occhipinti* v. *Weiner, ante* 388), we conclude that the warehouse agreement under discussion constituted Hamilton Rice an agent of the defendant to sell its merchandise. It follows that the plaintiff's purchase from Rice was a purchase from the defendant, who, by force of the statute, must be held to have warranted the tire to be reasonably fit for its intended use. *Hazelton* v. *First National Stores*, 88 N. H. 409, 410; *Howson* v. *Company*, 87 N. H. 200, 204.

The defendant's contention that the evidence is insufficient to sustain a finding that the accident was caused by a defect in the tire remains to be considered.

There was evidence that the tire was properly inflated and that during the period of its use the plaintiff had never "struck any obstruction with that tire so as to damage it in any way." The plaintiff testified that the tire "went down on the tarvia," causing his car "to skid to the right into the sand." A sergeant of the State Police who investigated the accident that evening testified that he dis-

covered parallel marks on the tarvia six inches apart and three feet long such as might have been made by a flattened tire with the rubber curled up around the rim. A tire expert of eighteen years experience testified that he examined the tire and tube after the accident and that the tire had "all appearances of blowing out."

This expert had completed a course under the instructors of a rubber company and had been himself an instructor in its school. He had studied vulcanizing, had worked in tire factories "learning the construction of tires," and had maintained a retreading and vulcanizing establishment of his own. He pointed out to the jury a break in the fabric on the inside of the tire which was due, he affirmed, to a defect in material or workmanship. He called attention to a corresponding break in the inner tube and to various "pinch marks" on the tube, and asserted his conviction that the break in the fabric of the tire had "pinched that tube and split it," thereby causing the blowout.

The field representative of the defendant's tire engineering and service department expressed the opinion that the accident was not caused by a blowout but that the tire was punctured by some object which it hit after the car left the road.

This conflict in expert testimony merely presented an issue of fact for the jury.

*Judgment on the verdict.*

BRANCH, J., did not sit: the others concurred.